Kichakdson, J.,
delivered the opinion of the court :
At the former trial of this case it was found by the court that the claimant was the owner of 196 bales of cotton, which were seized by the defendants’ officers, sold, and the proceeds paid into the public Treasury to the amount of $34,364.68. It was also found he was in possession of 297 other bales of cotton, upon which he had a factor’s lien for advances, and which were seized and sold by the defendants’ officers, and the proceeds paid into the Treasury to the amount of $56,025.21. Judgment was rendered in favor of the petitioner for both of said sums. (Villalonga v. The United States, 8. C. Cls. R., 452.)
On appeal, the Supreme Court was of opinion that of the proceeds of the cotton upon which the petitioner had a factor’s lien he was entitled to recover, not the full amount, but only so much thereof as would re-imburse him for his advances and expenses. The judgment of this court was reversed and the case remitted, with instructions to proceed in conformity to that opinion. (Ante, p. 22.) We are now required to deter *430 mine the amount due to the petitioner, for which he hada valid lien on the cotton, reduced to United States currency.
An agreement between the parties has been filed, wherein it is stipulated that a table, produced in evidence and printed in the record of the case, may be received as showing the dates of the advances; and that Barber’s tables, in 34 Georgia Beports 487, may be received as evidence of the value of Confederate currency, and. Appleton’s Cyclopedia for the year 1865 as evidence of the value of United States currency.
The petitioner claims—
1st. The amount of his advances and cash paid for freight, both in Confederate money, at the several dates under which they áre entered in the table which is in evidence, reduced to the value of United States notes in the manner specified in the agreement.
2d. The amounts paid or accrued for drayage, storage, and insurance, as shown in said table, the items of which may be classed together.
3d. Commissions on the amount for which the cotton was sold.
4th. Interest on the amount thus claimed, cast up to the day on which final judgment shall be entered in the case.
The first of these several claims is not controverted by the defendants, and is allowed.
The items charged for drayage, storage, and insurance are not objected to, except that the defendants insist that they accrued while Confederate notes were the currency of the place where the business was transacted, and were charged in that currency, and must therefore be reduced to United States currency in giving the petitioner judgment therefor in this action.' There is no doubt that these expenses did so accrue; and if they were charged at that time in the books of the claimant in the sums specified in the table referred to, those sums must represent Confederate currency. The evidence on that point is not clear; but from the testimony of McCall, who was for many years book-keeper for the claimant, although not in his employment at the times when these items occurred, the petitioner being then his own book-keeper, we are satisfied that the charges were not made and entered until United States notes became the currency in circulation when the amounts were charged, as they ought to have been, in the national currency of the country. Insurance by a factor is usually effected by a general *431 policy covering all tbe goods of bis own and of bis several customers, and tbe amount chargeable to each owner is not entered in bis account until tbe time of a final settlement; and other items of charges like those made by tbe claimant are not unfre-quently left to be entered in like manner when tbe account is to be closed. In this case tbe petitioner seems to have followed tbe usual course of tbe business, and all bis charges for drayage, storage, and insurance, having been made in United States currency, are allowed without reduction.
Tbe third claim for commissions must be rejected. Commissions accrue by contract, either express or implied, from tbe general custom of the business or from services actually rendered, neither of which in this case is proved by the petitioner. There were no services' performed by tbe claimant which entitle him to such compensation. Tbe cotton was taken from him by superior force and sold by the defendants, and he could no more legally charge a commission thereon than he could if tbe property had been burned, or lost at sea, or destroyed by other casualty.
As to the fourth claim, the defendants admit that interest may be charged up to tbe time when tbe cotton was sold, but insist that none can be allowed after that time, because, they say, interest on advances by a factor ceases when tbe goods are sold. This proposition would undoubtedly be correct in every case in which the factor received the money arising from tbe sale, for then*the debt would be extinguished by the money paid to him, and there would be no indebtedness upon which interest could accrue. In the case at bar, tbe proceeds of tbe •sale of tbe cotton have never been paid to tbe factor, and tbe claims against tbe general owners for advances and expenses remain unpaid, and must continue to bear interest until extinguished. Tbe defendants also maintain that to allow interest after tbe proceeds of tbe sale of tbe property went into tbe public Treasury would be contrary to tbe express provision of law, that “no interest shall be allowed on any claim up to the time of the rendition of judgment thereon by tbe Court of Claims, unless upon a contract expressly stipulating for the payment of interest.” (Act March 3,1863, chap. 92,12 Stat. L., p. 765, § 7; Bev. Stat., § 1091.) We are all of opinion that this objection cannot be sustained. The interest demanded is not upon a claim directly and absolutely against tbe United States, but is to be against a special fund, which tbe Supreme Court has de *432 cided to be held by the defendants in trust for the loyal owners of the property from the sale of which it is derived. (Klein v. The United States, 7 C. Cls. R., 240; 13 Wall., 128.) In that case the learned Chief-Justice, expressing the opinion of the court, said: “The Government constituted itself a' trustee for those who were by that act [of March 12,1863,] declared entitled to the proceeds of captured and abandoned property and for those whom it should thereafter recognize as entitled. * * * The property of the original owner is in no case absolutely divested. There is, as we have already observed, no confiscation; but the proceeds of the property have passed into the possession of the Government, and restoration of the property is pledged to none except to those who have continually adhered to the Government. Whether restoration will be made to others, or confiscation will be enforced, is left to be determined by considerations of public policy subsequently developed.”
The allowance of interest to the factor in this case will reduce the amount which would be payable to the general owners of the cotton, if any such should recover judgment therefor; and if such owners should not successfully prosecute their claims, it will diminish the balance of the funds left in the hands of the defendants.
This result would follow; and the effect would be the same, except in degree, whether we allow interest to the time of sale of the cotton, as admitted by the defendants to be correct, or to the time of entering judgment, as claimed by the petitioner.
Should the advances, expenses, and interest, however, exceed the amount of money paid into .the public Treasury from the sale of the cotton upon which his lien existed, the petitioner can recover nothing from the defendants beyond the amount so received by them.
Judgment will be entered in favor of the claimant for said advances, expenses, and interest, to be computed according to this opinion, but not to exceed the sum of $56,025.21, and also for $34,364.68, arising from the seizure and sale of the cotton owned by him in his own right.
These computations»may be made by the parties, if they can agree, as suggested by them at the hearing, and presented to the judges at chambers for examination and adoption, if found correct; otherwise they will be made by the court.